ANDREW L. PACKARD (State Bar No. 168690)
ERIK M. ROPER (State Bar No. 259756)
EMILY J. BRAND (State Bar No. 267564)
Law Offices of Andrew L. Packard
100 Petaluma Blvd. N., Suite 301
Petaluma, CA 94952
Tel: (707) 763-7227
Fax: (707) 763-9227
E-mail: Andrew@packardlawoffices.com
        Erik@packardlawoffices.com
        Emily@packardlawoffices.com

ROBERT J. TUERCK (State Bar No. 255741)
Jackson & Tuerck
P.O. Box 148
429 W. Main Street, Suite C
Quincy, California 95971
Tel: (530) 283-0406
E-mail: bob@jacksontuerck.com

Attorneys for Plaintiff
CALIFORNIA SPORTFISHING PROTECTION ALLIANCE

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CALIFORNIA SPORTFISHING PROTECTION ALLIANCE, a non-profit corporation,<br><br>            Plaintiff,<br><br>    vs.<br><br>WILLIAM "BILL" CALLAWAY, an individual, dba FEATHER RIVER CONCRETE PRODUCTS; and, JAEGER FAMILY TRUST, dba FEATHER RIVER CONCRETE PRODUCTS,<br><br>            Defendants. | Case No. 2:12-CV-00843-JAM-CKD<br><br>PLAINTIFF CALIFORNIA SPORTFISHING PROTECTION ALLIANCE'S SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ENTRY OF DEFAULT JUDGMENT AGAINST DEFENDANT WILLIAM CALLAWAY<br><br>(Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 to 1387)<br><br>Date: July 18, 2012<br>Time: 10:00 a.m.<br>Location: Courtroom No. 26<br>Magistrate Judge: Hon. Carolyn K. Delaney |

Consistent with the Court's Minute Order dated June 25, 2012, Plaintiff California Sportfishing Protection Alliance ("Plaintiff") files this Supplemental Memorandum of Points and Authorities in support of the instant Motion for Entry of Default Judgment Against Defendant

William Callaway ("Defendant"). Plaintiff requests that the monetary amount of the judgment be determined based on this supplemental memorandum and upon the affidavits of Plaintiff's counsel filed herewith.

## I. FACTUAL BACKGROUND

Plaintiff's complaint filed in this action sets forth six valid claims alleging that Defendant has violated, and continues to violate, the Federal Water Pollution Control Act (more commonly referred to as the "Clean Water Act," or "CWA") (hereinafter "CWA") and California's General Industrial Storm Water Permit ("General Permit"). ECF No. 1, filed April 2, 2012. Plaintiff's complaint attaches and incorporates by reference the 60-day Notice of Violations and Intent to File Suit Under the Federal Water Pollution Control Act letter that Plaintiff mailed to Defendant ("Notice Letter"). Plaintiff's Notice Letter sets forth as Attachment A thereto a list of 135 dates upon which significant rain events occurred at Defendant's ready-mix concrete facility in Yuba City, California that is the locus of the alleged violations ("Facility").

Plaintiff's complaint alleges, *inter alia*, that during each of these significant rain events, Defendant allowed storm water flowing over and through uncovered materials at the Facility to become contaminated with pollutants and subsequently discharge from the Facility into waters of the United States, in violation of the CWA and the General Permit. ECF No. 1, see e.g., ¶¶ 43, 52. Based on the 135 dates upon which Defendant violated the CWA and General Permit as alleged in the Notice Letter, when those 135 dates are multiplied by the six discrete claims set forth in Plaintiff's complaint, it forms Plaintiff's rationale for believing this Court should determine that Defendant has committed at least 810 violations of the CWA and General Permit. See Supplemental Affidavit of Plaintiff's Counsel Erik M. Roper ("Supp. Roper Affidavit") filed herewith at ¶ 2.

As discussed further below, CWA section 309(d) provides that any person who, *inter alia*, violates CWA section 301(a) "shall be subject to a civil penalty not to exceed $25,000 per day for each violation." As also discussed below, under the EPA Adjustment Rule, the statutory maximum penalty that may be assessed for CWA violations from March 15, 2004 through January 12, 2009 is

PLAINTIFF'S SUPPLEMENTAL MEMORANDUM IN
SUPPORT OF MOTION FOR ENTRY OF DEFAULT
JUDGMENT AGAINST DEFENDANT WILLIAM CALLAWAY

2

Case No. 2:12-CV-00843-JAM-CKD

$32,500 and for CWA violations after January 12, 2009 is $37,500.

Here, the Notice Letter attached to Plaintiff's complaint alleges that Defendant violated the CWA and General Permit on fifteen dates falling between 2004 and January 12, 2009. Fifteen multiplied by six results in ninety violations at the pre-January 12, 2009 rate of $32,500 per violation, per day for a total potential civil penalty for violations during that period of $2,925,000. Supp. Roper Affidavit at ¶ 3.

Additionally, the Notice Letter attached to Plaintiff's complaint alleges that Defendant violated the CWA and General Permit on one hundred and twenty dates subsequent to January 12, 2009. One hundred and twenty multiplied by six results in seven hundred and twenty violations at the post-January 12, 2009 rate of $37,500 per violation, per day for a total potential civil penalty for violations during that period of $27,000,000. Supp. Roper Affidavit at ¶ 4. Accordingly, the maximum civil penalty that may be imposed upon Defendant in this matter amounts to $29,925,000. *Id.* at ¶ 5.

As discussed below, under CWA section 505(d) (33 U.S.C. § 1365(d)), as the prevailing party Plaintiff is entitled to recover its costs reasonably incurred in litigating this matter (including reasonable attorney fees). Here, as of the filing of the supplemental memorandum and affidavits filed in support of the instant Motion, Plaintiff has incurred total costs, including attorneys' fees, of $10,125.59. See Supp. Roper Affidavit at ¶¶ 7-13, and Exhibit A attached thereto.

## II. STATUTORY BACKGROUND

Clean Water Act ("CWA") section 505(a), 33 U.S.C. § 1365(a) authorizes citizens to bring suit against any person who is alleged to be in violation of an effluent standard or limitation. CWA section 505(a) further authorizes district courts to apply any appropriate civil penalties under CWA section 309(d), 33 U.S.C. § 1319(d), in citizen suits brought under CWA section 505(a). The five-year statute of limitations set forth in 28 U.S.C. § 2462 is the relevant federal limitations period for imposition of civil penalties under a citizen suit enforcement action under the CWA. *Sierra Club v. Chevron U.S.A., Inc.*, 834 F.2d 1517, 1521 (9th Cir. 1987).

CWA section 505(f) defines an effluent standard or limitation to include "an unlawful act" under CWA section 301(a), 33 U.S.C. § 1311(a), which includes, *inter alia*, the discharge of pollutants to waters of the United States in violation of a CWA section 402 National Pollutant Discharge Elimination System ("NPDES") permit.  CWA section 309(d) provides that any person who, *inter alia*, violates CWA section 301(a) "shall be subject to a civil penalty not to exceed $25,000 per day for each violation."  As mandated by the Debt Collection Improvement Act of 1996, the U.S. Environmental Protection Agency ("EPA") has promulgated the Civil Monetary Penalty Inflation Adjustment Rule ("EPA Adjustment Rule") which adjusts for inflation CWA section 309(d)'s statutory maximum civil monetary penalties.  40 C.F.R. § 19.4.  Under the EPA Adjustment Rule, the statutory maximum penalty that may be assessed for CWA violations from March 15, 2004 through January 12, 2009 is $32,500 and for CWA violations after January 12, 2009 is $37,500.

### A.   Case Law Interpretation Of CWA Section 309(d)

CWA section 309(d) mandates that in determining the amount of a civil penalty "the court shall consider the seriousness of the violation or violations, the economic benefit (if any) resulting from the violation, any history of such violations, any good-faith efforts to comply with the applicable requirements, the economic impact of the penalty on the violator, and such other matters as justice may require."  District courts have broad discretion in calculating CWA civil penalties. *Tull v. United States*, 481 U.S. 412, 422, 426-27 (1987); *Natural Resources Defense Council v. Southwest Marine, Inc*., 236 F.3d 985 (9th Cir. 2000).  Courts must consider the statutory penalty assessment criteria set forth in CWA section 309(d) and explain how these criteria justify the civil penalty imposed.  *Southwest Marine*, 236 F.3d 985 (9th Cir. 2000); *United States v. Municipal Auth. of Union Township*, 150 F.3d 259, 262 (3rd Cir. 1998); *Public Interest Research Group v. Powell Duffryn Terminals, Inc*., 913 F.2d 64, 79 (3rd Cir. 1990).  Even still, while courts must justify their decisions as fitting under these criteria, wide discretion remains as to the final penalty assessment, with the Court's overall sense of equity of the penalty given the totality of the evidence the final determinative factor.  *United States v. Sheyenne Tooling & Mfg. Co*., 952 F. Supp. 1420, 1422-23 (D.N.D. 1996).

Numerous courts have emphasized that the purpose of CWA civil penalties is to deter noncompliance with the CWA and to punish the defendant/achieve retribution for noncompliance with the CWA. Accordingly, the courts have held that civil penalties must be large enough to achieve deterrence. *Friends of the Earth v. Laidlaw Envt'l Serv's*, 528 U.S. 167, 185 (2000) ("We have recognized on numerous occasions that 'all civil penalties have some deterrent effect.'").

*Atlantic States Legal Foundation, Inc. v. Universal Tool & Stamping Co., Inc*., 786 F. Supp. 743, 753 (N.D. Ind. 1992) ("To further the objective of the Act, the amount of the civil penalty must be high enough such that the penalty does not merely become a cost of doing business. If not, it becomes more profitable to pay the penalty rather than incur the costs of compliance."); *Public Interest Research Group v. Powell Duffryn Terminals, Inc*., 720 F. Supp. 1158, 1166 (D.N.J. 1989), *aff'd in part*, *rev'd in part on other grounds*, 913 F.2d 64 (3rd Cir. 1990) ("Civil penalties seek to deter pollution by discouraging future violations. To serve this function, the amount of the civil penalty must be high enough to insure that polluters cannot simply absorb the penalty as a cost of doing business. Otherwise, a rational profit maximizing company will choose to pay the penalty rather than incur compliance costs. Additionally, the probability that a penalty will be imposed must be high enough so that polluters will not choose to accept the risk that non-compliance with [*sic*] go unpunished." (citations omitted)).

**B.     The Plain Language of CWA Section 309(d) Mandates Civil Penalties**

CWA section 309(d) provides that "any person who violates" the CWA "shall be subject to a civil penalty."  Relying on the use of the word *shall*, courts have held that once a defendant's CWA liability is established, the district court's assessment of some amount of civil penalty is mandatory. *See Leslie Salt Co. v. United States*, 55 F.3d 1388, 1397 (9th Cir. 1995) ("We agree with the [Fourth and Eleventh C]ircuits that have held that civil penalties are mandatory under section 309(d)"); *Stoddard v. W. Carolina Reg'l Sewer Auth.*, 784 F.2d 1200, 1208 (4th Cir. 1986) (finding that section 309(d)'s penalty provision "leaves little doubt that . . . a penalty in some form is mandated. Liability under the [CWA] is a form of strict liability.").

PLAINTIFF'S SUPPLEMENTAL MEMORANDUM IN
SUPPORT OF MOTION FOR ENTRY OF DEFAULT           5
JUDGMENT AGAINST DEFENDANT WILLIAM CALLAWAY

Case No. 2:12-CV-00843-JAM-CKD

### C. Top-Down Versus Bottom-Up Civil Penalties Calculation Methodologies

The case law establishes two divergent methodologies for calculating CWA civil penalties: (1) the "top-down method" and (2) the "bottom-up method." CWA section 309(d) does not mandate either approach, and the courts have discretion as to which method to employ. *United States v. Municipal Auth. of Union Township*, 150 F.3d 259, 265 (3rd Cir. 1998). In the top-down method, courts begin their civil penalty calculation at the statutory maximum and then only adjust the civil penalty downward to the extent warranted by consideration of the Clean Water Act section 309(d) factors. *See e.g.*, *Atlantic States Legal Foundation v. Tyson Foods*, 897 F.2d 1128, 1137-40 (11th Cir. 1990) (often cited as the leading case for this approach). In the bottom-up method, courts either begin their civil penalty calculation at zero or at the sum equal to the defendant's economic benefit of noncompliance and adjust the civil penalty upward as warranted by consideration of the CWA section 309(d) factors. *United States v. Smithfield Foods, Inc.*, 191 F.3d 516, 528-29 (4th Cir. 1999), *cert. denied*, 121 S. Ct. 46 (2000).

### D. Seriousness of Violations

As noted above, CWA section 309(d) requires the courts to take into account "the seriousness of the violation or violations" as part of its civil penalty assessment criteria. Courts have repeatedly observed that proof of actual environmental harm is not necessary to justify imposition of substantial civil penalties, that evidence that discharges risked harm is sufficient to find the violations to be serious. *Public Interest Research Group v. Powell Duffryn Terminals, Inc.*, 913 F.2d 64, 79 (3rd Cir. 1990); *United States v. Municipal Authority of Union Township and Dean Dairy Products Co.*, 929 F. Supp. 800, 1382-83 (M.D. Pa. 1996) ("It must be emphasized, however, that because actual harm to the environment is by nature difficult and sometimes impossible to demonstrate, it need not be proven to establish that substantial penalties are appropriate in a Clean Water Act case.").

### E. Economic Impact and Defendant's Ability to Pay

As discussed above, CWA section 309(d) requires the courts to take into account the

economic impact of the penalty as part of its civil penalty assessment criteria.  Courts have reduced civil penalties based on a showing that the penalties would impose substantial hardships on the defendant.  *United States v. Confederate Acres Sanitary Sewer and Drainage System, Inc*., 767 F. Supp. 834, 840 (W.D. Ky. 1990).  However, the burden is on the defendant to show that any reduction in its civil penalty should be calculated because of the penalty's economic impact on the defendant.  *Powell Duffryn*, 720 F. Supp. at 1166.

### F.     Good Faith Efforts To Comply

CWA section 309(d) requires a district court to consider "any good-faith efforts to comply with the applicable requirements" in determining the amount of civil penalties.  Courts have recognized good faith compliance efforts as a mitigating factor that favors reducing penalty calculations.  *E.g., United States v. Smithfield Foods, Inc*., 191 F.3d 516 (4th Cir. 1999), *cert. denied*, 121 S. Ct. 46, 148 L. Ed. 2d 16 (2000).  Conversely, lack of good faith efforts to comply or affirmative recalcitrance in violating the CWA favors increasing civil penalties.  *United States v. Key West Towers, Inc.*, 720 F. Supp. 963, 965-966 (S.D. Fla. 1989).

### G.     Prior History of Violations

As noted, CWA section 309(d) requires a district court to consider "any prior history of such violations" in determining the amount of civil penalties.  That the defendant has a long history of violations predating the CWA's five-year statute of limitations for actionable violations weighs in favor of increasing the civil penalty, or at least not reducing it.  *Powell Duffryn*, 720 F. Supp. at 1163 (noting that defendant's violations spanned an 11 year period).

## III.   ARGUMENT

### A.    CWA Section 309(d) Civil Penalty Factors All Weigh In Favor Of Imposing Maximum Civil Penalties on Defendant

CWA section 309(d) mandates that in determining the amount of a civil penalty "the court shall consider the seriousness of the violation or violations, the economic benefit (if any) resulting from the violation, any history of such violations, any good-faith efforts to comply with the

PLAINTIFF'S SUPPLEMENTAL MEMORANDUM IN
SUPPORT OF MOTION FOR ENTRY OF DEFAULT
JUDGMENT AGAINST DEFENDANT WILLIAM CALLAWAY

7

Case No. 2:12-CV-00843-JAM-CKD

applicable requirements, the economic impact of the penalty on the violator, and such other matters as justice may require."  Given Defendant's refusal to defend himself in this case and the lack of evidence arising from that refusal, all these civil penalty assessment factors cut in favor of imposing the maximum civil penalty upon him.

With respect to the seriousness of the violations and Defendant's history of violations, the complaint filed in this action sets forth six valid claims alleging that Defendant has violated, and continues to violate, the CWA and California's General Industrial Storm Water Permit ("General Permit").  By virtue of the default, Defendant may not challenge any of the factual allegations supporting those claims.  Further, given the strict liability nature of the CWA, having established Defendant's liability by virtue of the default entered against him by the Clerk of the Court, Defendant's violations are by definition serious.  Additionally, three inspections of Defendant's ready-mix concrete manufacturing facility that is the subject of this action ("Facility") conducted by California's Central Valley Regional Water Quality Control Board ("Regional Board") as recently as November of 2011 provide the Court a telling glimpse into the nature of the history of Defendant's violations of the CWA then occurring at Defendant's Facility.  Supp. Roper Affidavit, Exh. B.

With respect to the economic benefit Defendant has enjoyed by not complying with the CWA and General Permit, Plaintiff has no way of knowing how much economic benefit Defendant has enjoyed given his failure to respond in any meaningful way to Plaintiff's complaint.  Given this dearth of evidence, it is impossible to apply the bottom-up civil penalties calculation methodology discussed above.  Rather, Plaintiff believes this Court should employ the top-down approach discussed above.  In the top-down method, courts begin their civil penalty calculation at the statutory maximum and then only adjust the civil penalty downward to the extent warranted by consideration of the Clean Water Act section 309(d) factors.  *See e.g.*, *Atlantic States Legal Foundation v. Tyson Foods*, 897 F.2d 1128, 1137-40 (11th Cir. 1990) (often cited as the leading case for this approach).  Here, in light of Defendant's failure to defend and provide this Court any evidence in favor of reducing penalties, Plaintiff believes that justice compels imposing the maximum civil penalty available under the CWA.

With respect to the economic impact on Defendant of the imposition of such penalties, again, the Court has no way of knowing how they will impact Defendant. As discussed above, the burden is on the defendant to show that any reduction in its civil penalty should be calculated because of the penalty's economic impact on the defendant. *Powell Duffryn*, 720 F. Supp. at 1166. Here, Defendant has made no such showing.

Finally, with respect to Defendant's history of violations and good faith efforts to comply, the Court should find it noteworthy that Defendant is a recalcitrant, repeat violator of the CWA and the General Permit. *See e.g.*, Notice of Violation of the General Permit and accompanying inspection report issued by the Regional Board to Defendant in spring of 2005, a true and correct copy of which is attached to the Supplemental Roper Affidavit as Exhibit C.

## IV.    CONCLUSION

For all the foregoing reasons, Plaintiff respectfully requests that the Court enter a default judgment against Defendant William Callaway imposing civil penalties upon him in the amount of $29,925,000.00, and requiring him to reimburse Plaintiff $10,125.59 which reflects its costs reasonably incurred in litigating this matter (including reasonable attorney, witness, and consultant fees) as authorized by CWA section 505(d), 33 U.S.C. § 1365(d).

Dated: July 5, 2012                           Respectfully Submitted,

                                              LAW OFFICES OF ANDREW L. PACKARD


                                              By:    /s/ Erik Roper_____
                                                     Erik M. Roper
                                                     100 Petaluma Blvd. N., Suite 301
                                                     Petaluma, CA 94952
                                                     (707) 762-8205
                                                     erik@packardlawoffices.com
                                                     Attorneys for Plaintiff
                                                     CALIFORNIA SPORTFISHING
                                                     PROTECTION ALLIANCE